FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

97 OCT -1 PM 4:05

U.S. DISTRICT COURT
N.D. OF ALABAMA

PATRICIA A. BLANKENSHIP )
and JUDITH A. CLEMENS, )
)
    Plaintiffs, )
)
vs. )    CIVIL ACTION NO.
)    CV-96-N-1667-NE
STATE OF ALABAMA )
ADMINISTRATIVE OFFICE OF )
COURTS and LEONARD GRIGGS, )
individually and in his official capacity as )
Clerk of the Court, Circuit Court of )
Jackson County, Alabama, )
)
    Defendants. )

ENTERED
OCT 1 1997

### Findings of Fact and Conclusions of Law

These findings of fact and conclusions of law were prepared and submitted by counsel for the defendants at the request of the court. They were served on counsel for the plaintiffs who has informally notified the court that he has no objection, either as to content or form.[1] Because the plaintiffs do not object and the proposed findings and conclusions are substantially correct, the court will, with slight modifications, adopt the defendants' proposed findings and conclusions as submitted.

Plaintiffs Patricia Blakenship and Judith Clemens brought a first amendment retaliation claim under 42 U.S.C. § 1983 against Defendant Leonard Griggs. Both Plaintiffs were employees in the Circuit Clerk's office in Jackson County, Alabama and worked for the Circuit Clerk, Leonard Griggs. In 1994, Ms. Blakenship unsuccessfully challenged Mr. Griggs for the office of Circuit Clerk of

---

[1] The court does not construe Mr. Quinn's failure to object as his agreement that the court has correctly decided the issues.



Jackson County, Alabama in the democratic primary. Ms. Clemens supported Ms. Blakenship in her political campaign against Mr. Griggs. Ms. Blakenship claimed that after she lost the primary election and returned to work, Mr. Griggs suspended her without pay and terminated her for claimed insubordination. Ms. Clemens claims that Mr. Griggs retaliated against for her support of Ms. Blakenship by issuing her a written reprimand and suspending her without pay.

In determining First Amendment claims, the Eleventh Circuit employs a four part test:

1. Does it constitute speech on a matter of public concern.

2. Employee's 1st amendment interests against the interests of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.

3. Fact-finder determines whether the employee's speech played a substantial part in the government's decision to demote or discharge the employee

4. The state must prove by a preponderance of the evidence that it would have reached the same decision...even in the absence of the protected conduct.

The first two are questions of law, the second two are for the fact finder. *Morris v. Crow* 117 F.3d 449 (11th Cir. 1997). There is no dispute that running for office is a matter of public concern. Therefore, the speech must be weighed against the state's interest in promoting efficient service. It must be determined whether the speech at issue: "impairs discipline by superiors or harmony among co-workers has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes performance of the speaker's duties or interferes with the regular operation of the public employer's enterprise." In this case, it is clear that Ms. Blakenships running for office; subsequent defeat and announcement that she was running for election again had an adverse affect on the efficient running of the office. Testimony indicated that Ms. Blakenship, as

well as other employees were "taking notes" on each other. Ms. Blakenship accused a fellow employee, Rebecca Smith of being placed in the back to "watch" her. Ms. Blakenship stuck a tape recorder in Mr. Griggs face, openly confronted him and was insubordinate. Furthermore, Ms. Blakenship refused to obey directions of Mr. Griggs in view of the public, thereby interfering with the efficient running of the office. All employees of the Clerk's office testified that the atmosphere in the office was very strained and that Ms. Blakenship's working in the office interfered with the efficient working of the office. After Ms. Blakenship was terminated, the atmosphere in the office improved dramatically.

In *Caruso v. De Luca* 81 F.3d 666 (7th Cir. 1996) a former deputy clerk for city brought action against city and city clerk in violation of her First Amendment rights. The Seventh Circuit held that the City clerk's legitimate management concerns with respect to efficient operation of city clerk's office outweighed former deputy clerk's First Amendment interest in expressing opposition to city clerk while participating in election campaign for city clerk position. Therefore, the termination of the employee after the election did not violate city deputy clerk's First Amendment rights.

Likewise, in *Carver v. Dennis* 104 F.3d 847 (6th Cir. 1997) the deputy county clerk sued county clerk after being terminated for running for the office of clerk. The Sixth circuit held that the Deputy County Clerk lacked First Amendment free speech or associational right to run against county clerk in next election and still retain her job. In this case, Ms. Blakenship announced the night of her defeat for Circuit Clerk that she was running for election again and asked for the support of the citizens. Most appropriate to this case is the maxim that the First Amendment does not require that an official nourish the viper in the nest. The First Amendment does not require a public employer to tolerate an embarrassing, vulgar, vituperative, ad hominem attack, simply because the employee

3

recently has waved a political sign, or was waving the sign while conducting the attack. *Morris v. Crow* 117 F.3d 449 (11th Cir. 1997) The court has never recognized a fundamental right to express one's political views through candidacy. *Bullock v. Carter*, 405 U.S. 134, 143 (1972).

The public employer is not required to wait until those working relationships actually disintegrate if immediate action might prevent such disintegration. There is no necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.

Therefore, the state's interest in promoting the efficiency of the office outweighed the plaintiff's right to run for election.

Even if the state's interest did not outweigh the right to engage in political activity, the employer would have taken the same action regardless of the protected activity. In the case of Ms. Blakenship, she was insubordinate and disrespectful to Mr. Griggs on January 13, 1995. In fact, Ms. Blakenship admitted that she was on the phone and stated that "she had to go, that Mr. Griggs had walked in and he would want to know who she was talking with." Ms. Blakenship further admitted that she told Mr. Griggs he'd have to ask Trooper Davis what was said regarding the ticket and further conceded that she continued to talk after being told to be quiet and leave it alone.

Ms. Clemens claimed that she was suspended in December of 1996 for supporting Ms. Blakenship in her campaign for Circuit Clerk. However, the evidence demonstrated that Ms. Clemens was verbally reprimanded at least six times for rudeness, prior to her "supporting" Ms. Blakenship in her campaign. In the ten day suspension of December, 1996, Mr. Griggs not only received a complaint about Ms. Clemens, but also had a visit from the mother of the child to whom Ms. Clemens was allegedly rude. As Ms. Clemens had been verbally reprimanded, and written up less than two

4

months prior to this incident, a ten day suspension was in order.

Therefore, even if the actions taken against the plaintiffs were due to their engagement in a protected activity, the same employment decisions would have been made.

Judgment will be entered in favor of the defendants and against the plaintiffs on all issues left unresolved by the jury verdict. Costs will be taxed against the plaintiffs and in favor of the defendants.

Done this the ___1st___ day of October 1997.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

5